*Windham,*
*February,*
*1827.*

### URIEL C. HATCH, *ex parte.*

The ordinary jurisdiction of justices of the peace to render a judgment upon the confession of the party, is conferred by the act of 1797, (*Stat.* 130, *ch.* 9, *sec.* 21) and all executions issued upon judgments rendered by virtue of that act, must be made returnable within sixty days from date:

It is only in the cases specified in the act of 1821, (*stat.* 140, *ch.* 9, *no.* 9, *sec.* 3-6) that an execution of a judgment upon a confession can be made returnable in *one hundred and twenty* days.

If a party be taken and committed to prison, on an execution made returnable within 120 days, where by law it ought to have been made returnable in *sixty* days, after the expiration of *sixty* days from the date of such execution, such commitment is irregular, and the prisoner will be discharged on *habeas corpus.*

*It would seem,* that where a party is illegally restrained of his liberty, under colour of an execution between party and party, and seeks to be relieved by *habeas corpus,* notice should be given to the opposite party:

*Dictum*—A justice of the peace may render a judgment for *the balance,* in case of mutual offsets, though it be for more than the sum of one hundred dollars.

HABEAS CORPUS.—On the first day of this term, *Uriel C. Hatch* preferred his petition to this Court, representing that he

was unlawfully restrained of his liberty in the common jail of Windham county, by *Paul Chase, Esq.* sheriff of said county, and praying that a writ of *habeas corpus* may issue to the said sheriff, forthwith to bring said *Hatch* before the Court, with the cause of his commitment. The petitioner, instead of relying upon his general affidavit of the unlawful detention, produced in Court a copy of the execution upon which he was detained, as he supposed, together with a certified copy of the record of the judgment upon which said execution issued. The difficulties apparent upon these copies were so great, the Court thought proper to grant the writ prayed for, at the same time suggesting, as it was an execution between party and party, it would be proper to give some sort of notice to the creditor.

On the second day of the term the sheriff brought up the body of the prisoner and returned the said writ into Court, with his return accompanying the same. That he held said *Hatch* in custody by virtue of an execution (annexing a copy of it) in favour of *the president, directors and company of the bank of Windsor*, against the said *Hatch*, issued by *Thomas Leland, Esq.* as a justice of the peace for the county of Windsor, upon a judgment rendered by said *Leland* against said *Hatch* and one *Asaph Fletcher, jr.* for $131,83 damages, and twenty-five cents cost of suit, rendered on the 22d day of September, 1824, and dated the 11th day of August, 1826, and made returnable to said justice within *one hundred and twenty days* from its said date, also returning that said *Hatch* was committed to said jail upon said execution, on the eighth day of December, A. D. 1826. The affidavit of *Horace Everett, Esq.* a director of said bank, was produced, showing that he had notice of this application, but that the demand had been assigned, and did not now belong to the bank. *Martin Field, Esq.* being present, announced to the Court, that he had been appointed agent for the creditors upon said execution, and had notice of this proceeding.

*Bradley,* for the prisoner, then proceeded to urge his discharge, on the grounds,

1st. That the execution was void, it not appearing upon the face of it, that the judgment was rendered by confession, and being for a larger sum than the justice could render judgment for, in any other way.

2d. It appears to have issued upon a judgment, and in case of a confession, it is the duty of the justice to record such confession and issue execution, but he renders no judgment.

3d. The execution is void, at least after its first sixty days, it running 120 days, and being larger than the justice could issue under the provisions of the act of 1821.

*Hubbard* added, 4th, That no justice, by virtue of his ordinary jurisdiction, can in any case render a judgment for more than $100 damages, and if he acted in the exercise of any special jurisdiction, that ought to appear in the process, or it is no justification for the officer.

PRENTISS, J. The prisoner must be discharged. It appears by the execution and the copy of the record of the judgment, that the proceedings were not had under the act of 1821, under which alone executions can issue running 120 days ; and it appears that the commitment was after the first sixty days had expired. The judgment was confessed under the authority of the act of 1797, under which an execution can run but sixty days. But I think, in case of offsets, a justice may render a judgment for more than $100. The statute directs judgment to be rendered, in such case, *for the balance,* without limitation.

HUTCHINSON, J. I see no great weight in the objection that a justice should not render a judgment when he takes a confession, but only record the confession and issue execution. It is rather too refined for common justices, and the practice has been otherwise. I think when he records the confession, he may add a judgment for the sum, and then the execution may be in due form of law, and recite a judgment. And it should recite it as rendered by confession, though that is not always done. And I have no doubt but that a justice of the peace may, as mentioned by his honour judge *Prentiss,* render judgment for a sum over $100, in case of mutual offsetts. For instance, the plaintiff may bring his action upon a note for $90. The defendant may file an offset of twenty or thirty dollars. The plaintiff may then reply an offset of another note of ninety dollars. Then by the plain expressions of the statute, judgment must be rendered for the balance, which, in such case, must exceed $100. Then we may apply the principle, that when process issues from a court that has jurisdiction to issue such process in any case, the officer has a right to presume this to have issued in such a case. It therefore affords ample protection for him. But the party procuring the process, must look at the foundation and see at his peril that there is foundation for the process he uses. Now the foundation of this execution was a judgment rendered by confession, under the act of 1797, and, as that did not warrant the execution to run but sixty days, and the prisoner was committed upon it after it had run 119 days, I am clear it was irregular, and the prisoner ought to be discharged.

ROYCE, J. concurred.

SKINNER, Ch. J. absent.

*J. Hunt, Wm. C. Bradley* and *J. H. Hubbard,* counsel for the prisoner.